IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| GLOCK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| Maxsell Corporation, | ) | |
| | ) | [JURY TRIAL DEMANDED] |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, GLOCK, Inc. ("GLOCK") states its Complaint against Defendant Maxsell Corporation ("Maxsell") as follows:

## PARTIES

1.    Plaintiff GLOCK is a Georgia corporation with its principal place of business at 6000 Highlands Parkway, Smyrna, Georgia 30082.

2.    Upon information and belief, Defendant Maxsell is a Florida corporation whose principal place of business is located at 6601 Lyons Road, Suite D1, Coconut Creek, Florida, 33073.

3.    In marketing, selling and distributing the M917 (as hereinafter defined) into the United States, and the State of Georgia, Defendant has committed unlawful acts, including, but not limited to, federal trade dress infringement and

unfair competition, federal dilution, common law trade dress infringement and unfair competition, and deceptive trade practices as more fully set forth herein.

4.     In manufacturing, marketing, selling and distributing GLOCK Resin Copies (as hereinafter defined) into the United States, and the State of Georgia, Defendant has committed unlawful acts, including, but not limited to, federal trade dress infringement and unfair competition, federal dilution, common law trade dress infringement and unfair competition, and deceptive trade practices as more fully set forth herein.

## JURISDICTION AND VENUE

5.     This is an action for injunctive relief, damages, treble damages and an award for attorneys' fees for infringement of a federally-registered trade dress under 15 U.S.C. § 1114(1)(a); trade dress infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution of a famous trade dress under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and for unfair competition in violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et. seq*., and the common law. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a) and under the doctrine of pendent jurisdiction pursuant to 28 U.S.C. § 1338(b).

This Court has jurisdiction over the Defendant pursuant to the provisions of the Georgia long arm statute, O.C.G.A. § 9-10-91.

6.    Venue is proper in this Court pursuant to the provisions of 28 U.S.C. §§ 1391 and § 1400(b).

## FACTS COMMON TO ALL COUNTS

7.    In 1982, Gaston Glock developed the first commercially successful polymer-frame semi-automatic pistol, the GLOCK 17. It has been well publicized that the GLOCK 17 was regarded as a radically new design in virtually every respect. It revolutionized the industry. The new, unique appearance of the GLOCK 17 featured an external design and image that was a significant departure from the traditional metal design widely used over the last century by other pistol manufacturers, such as Smith & Wesson, Heckler & Koch and Colt.

8.    GLOCK was formed in 1985 to assemble and market the GLOCK 17 in the United States. Subsequently, Gaston Glock developed a complete family of GLOCK pistols, including the Model 17L, Model 18, Model 19, Model 20, Model 21, Model 22, Model 23, Model 24, Model 25, Model 26, Model 27, Model 28, Model 29, Model 30, Model 31, Model 32, Model 33, Model 34, Model 35, Model 36, Model 37, Model 38, and Model 39. The family of polymer-frame pistols is herein collectively referred to as the "GLOCK pistols." Despite some initial

skepticism from gun traditionalists, the GLOCK pistols became enormously successful in the United States, with consumers and especially with law enforcement agencies. By 1991, more than 3,500 federal, state and local law enforcement agencies and departments in the United States had adopted or approved GLOCK pistols for duty use. By 1996, GLOCK had captured over one half of the United States law enforcement handgun market. GLOCK pistols are presently used by over sixty-five percent (65%) of Federal, State and local law enforcement agencies across the Country, including the Federal Bureau of Investigation, Drug Enforcement Agency, and the Federal Bureau of Prisons.

9.      Gaston Glock's original design and concept for the GLOCK 17 has stayed virtually intact for the entire line of GLOCK pistols since creation. All of the various GLOCK pistols share the same distinctive design and appearance as the original Model 17.

## THE GLOCK TRADE DRESS

10.      GLOCK pistols feature a distinctive appearance and overall image which represents a significant departure from the traditional pistol designs used by other pistol manufacturers. GLOCK pistols include a polymer frame with a slide top lever built flush into one side of the frame and a small slide lock positioned in an angled groove on both sides of the frame above the trigger. The slide and the

upper part of the polymer frame on GLOCK pistols have a distinctive blocky and squared-off shape, with polymer sights carrying a white dot on the top of the slide and serrations on each side of the rear portion of the slide. The serial number plate is embedded on the underside of the front part of the frame. The interface between the slide and the frame on GLOCK pistols includes a distinctive gap. The bottom portion of the frame includes both the handgrip and trigger guard. The handgrip of GLOCK pistols includes distinctive serrations on the front and rear faces and both sides of a GLOCK pistol handgrip are slightly raised and textured. The front face of the handgrip includes two raised finger ridges. At the transition between the rear of the gun and the handgrip is a slightly projecting down-turned lip. The trigger guard of a GLOCK pistol is also a blocky and squared-off shape with distinctive serrations on the front face. The pistols are entirely flat black in color. This previously unknown selection of non-functional design elements present an inherently distinctive appearance and have acquired secondary meaning. True and correct copies of photographs of select GLOCK model pistols are attached as **Exhibit A**.

11.    The trade dress of GLOCK pistols has acquired a substantial level of sources identifying capability, i.e., secondary meaning. This secondary meaning is the result of, among other things, the widespread popularity and use of GLOCK

pistols by law enforcement agencies and civilians throughout the United States, GLOCK's extensive marketing and promotional efforts, and extensive third-party publicity.

12.    GLOCK is the owner of a federal trademark registration for its trade dress in international class of goods 13, Reg. No. 2,807,747 registered on January 27, 2004 by the United States Patent and Trademark Office (USPTO). A true and correct copy of the registration is attached as **Exhibit B**. The description of the mark is as follows:

> The mark consists of the three dimensional overall configuration of a semi-automatic pistol having a blocky an[d] squared-off shape as viewed from the side, the front, and the rear. The vertical lines at the rear of the slide indicate ridges. The stippling is a feature of the mark and not intended to indicate color. The dotted lines indicate features that are not claimed as a part of the mark. Neither the shape of the notch on the rear sight nor the circular shape of the interior of the barrel are claimed as a part of the mark. The shape of the trigger guard and the shape, location, and a position of the trigger safety tab are claimed as a part of the mark, but no claim is made to the shape of the trigger separate from the trigger safety tab.

Registration No. 2,807,747 is incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. §1065 and, therefore, GLOCK has the exclusive right to use its trade dress. GLOCK also holds a second registration, Reg. No. 2,807,745. This registration features a different grip configuration than the current GLOCK pistols.

Registration No. 2,807,747 is a part of a family of famous GLOCK marks, including the mark GLOCK (Reg. No. 1,691,390), which is also incontestable; GLOCK design mark (Reg. No. 3,037,263); the mark "GLOCK PERFECTION" (Reg. No. 2,440,268), and many other word and design marks.

13.    Acceptance of GLOCK pistols in the marketplace was immediate, and sales of GLOCK pistols have continued to grow since their introduction. GLOCK has promoted the sale of the GLOCK pistols by extensive advertising in newspapers and magazines as well as through appearances at trade shows and other events throughout the United States. Newspapers and magazines throughout the United States have included feature articles about the GLOCK pistols, and such pistols have been generally recognized in the press as the leading polymer-frame semi-automatic pistol in the world-wide market. Such articles have featured the distinctive appearance and the unique operation of GLOCK pistols. True and correct copies of articles featuring or discussing GLOCK pistols from several leading handgun magazines are attached as **Exhibit C**. Newspapers and magazines throughout the United States have included feature articles, authored by third parties, about the GLOCK pistols, and such pistols have been generally recognized in the press as the leading polymer-frame semi-automatic pistol in the world-wide market. Such articles have featured the distinctive appearance and the unique

operation of GLOCK pistols. True and correct copiers of articles featuring or discussing GLOCK pistols from several leading handgun magazines are attached as **Exhibits (D)(1) – D(9).**

14.    Another form of third-party publicity of GLOCK pistols has been in television and movies. For example, GLOCK pistols have been featured in movie productions such as INCEPTION, THE TOWN, THE FUGITIVE, DIE HARD II, BAD BOYS II, and TRUE LIES, and television productions such as THE SOPRANOS, 24, X-FILES, NYPD BLUE, CSI, JUSTIFIED and LAW & ORDER. Hundreds of instances of use of GLOCK pistols in film, television and video games have been compiled on the Internet Movie Firearm Database available at http://www.imfdb.org/wiki/Glock. Such widespread publicity has contributed to GLOCK pistols being among the most recognizable pistols in the world.

15.    GLOCK has developed valuable goodwill in the trade dress of the GLOCK pistols, and the relevant public, including the public within the Northern District of Georgia, have come to know, recognize and identify the distinctive look and appearance of a pistol originating from GLOCK.

16.    As a result of extensive sales, marketing and promotion by GLOCK and others, the trade dress of the GLOCK pistol has become famous.

17.    GLOCK has not licensed or granted to Defendant the authority, permission, or any other right to make, use, offer for sale, or sell a pistol that copies or otherwise utilizes the trade dress of the GLOCK pistol or that resembles a GLOCK pistol.

## DEFENDANTS' ACTIVITIES – THE M917

18.    In or about December 2011, representatives of GLOCK first became aware that Maxsell was marketing, distributing, and selling the M917, a blank-firing replica pistol (the "M917").

19.    The M917 substantially duplicates the distinctive look and appearance of the GLOCK pistols, and in particular the GLOCK 17 pistol. The GLOCK 17 pistol and the M917 (i) both have a polymer frame and a steel alloy slide, (ii) have nearly identical dimensions (length, height and width), and (iii) have nearly identical weight. True and correct copies of photographs showing a side-by-side comparison of the M917 with a GLOCK 17 pistol are attached as **Exhibit E**.

20.    Maxsell marketed and sold the M917 using websites with the following urls: www.maxsell.com; www.maxarmory.com; www.blankgunstore.com; and www.collectorsarmory.com.  True and correct copies of webpages from these websites displaying the M917 and offering the

M917 for sale (as these webpages existed on January 6, 2012) are attached as **Exhibit F**.

21.    The M917 embodies the external design, the distinctive appearance, and the overall image of the GLOCK pistols so as to cause a likelihood of confusion as to the source of the M917.

22.    By marketing, selling, and/or distributing the M917, Defendant falsely indicates to the public that the Defendant and/or the M917 are in some manner connected with, sponsored by, affiliated with, or approved by GLOCK. Defendant's conduct infringes and dilutes the exclusive trade dress rights of GLOCK in the GLOCK pistols.

23.    Upon information and belief, Maxsell markets and sells the infringing M917 in the State of Georgia, and specifically in the Northern District of Georgia and in this division.

<h2 align="center">DEFENDANT'S ACTIVITIES – GLOCK RESIN COPIES</h2>

24.    In or about December 2011, representatives of GLOCK first became aware that Maxsell was manufacturing, marketing, distributing, and selling non-functioning resin copies of GLOCK pistols ("GLOCK Resin Copies").

25.    Maxsell uses dedicated webpages on its www.maxsell.com and www.maxarmory.com websites to market and sell GLOCK Resin Copies. True and

correct copies of printouts of these webpages which show images of the GLOCK

Resin Copies are attached as **Exhibits G and H**.

26.    These webpages represent that Maxsell's GLOCK Resin Copies "look

just like the originals," as shown on Exhibits G and H.

27.    Maxsell represents on its www.maxsell.com and

www.maxarmory.com websites that it is the manufacturer of the GLOCK resin

copies, as shown by a true and correct printout of a webpage from the

www.maxsell.com website attached hereto as **Exhibit I**.

28.    GLOCK Resin Copies embody the external design, the distinctive

appearance, and the overall image of the GLOCK pistols so as to cause a

likelihood of confusion as to the source of the GLOCK Resin Copies.

29.    By manufacturing, marketing, selling, and/or distributing GLOCK

Resin Copies, the Defendant falsely indicates to the public that the Defendant

and/or GLOCK Resin Copies are in some manner connected with, sponsored by,

affiliated with, or approved by GLOCK. Defendant's conduct infringes and dilutes

the exclusive trade dress rights of GLOCK in the GLOCK pistols.

30.    Upon information and belief, Maxsell markets and sells the infringing

GLOCK Resin Copies in the State of Georgia, and specifically in the Northern

District of Georgia and in this division.

## COUNT I

### Infringement of GLOCK's Federally Registered Trade Dress

31.     Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-30 of the Complaint.

32.     By marketing and selling the M917, Defendant has infringed Plaintiff GLOCK's registered trade dress in the GLOCK pistols. Defendant's aforesaid acts falsely represent that Defendant is affiliated, connected or associated with Plaintiff GLOCK and tend to describe falsely that Defendant's goods emanate from or are sponsored or approved by GLOCK.

33.     By manufacturing, marketing and selling GLOCK Resin Copies, Defendant has infringed Plaintiff GLOCK's registered trade dress in the GLOCK pistols. Defendant's aforesaid acts falsely represent that Defendant is affiliated, connected or associated with Plaintiff GLOCK and tend to describe falsely that Defendant's goods emanate from or are sponsored or approved by GLOCK.

34.     Upon information and belief, Defendant has willfully promoted its business in interstate commerce and intentionally traded upon GLOCK's reputation and goodwill, thereby causing confusion or mistake or deception among purchasers as to the true origin, source, sponsorship, or affiliation of the Defendant's goods, all to the Defendant's profit and to GLOCK's monetary

damage. GLOCK has been, and will continue to be, irreparably damaged by Defendant's use of such confusingly similar trade dress.

35.    Defendant's acts, as set forth above, violate GLOCK's rights in its registered trade dress pursuant to 15 U.S.C. § 1114(1).

36.    If not enjoined by this Court, Defendant will continue its acts of trade dress infringement as set forth above, which acts have caused, and will continue to cause, GLOCK immediate and irreparable harm. Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(a), GLOCK is entitled to an Order of this Court enjoining Defendant's unlawful activities. GLOCK has no adequate remedy at law.

37.    As a result of Defendant's infringement of GLOCK's registered trade dress, GLOCK has been, and continues to be, irreparably damaged. Pursuant to 15 U.S.C. §§ 1117-1118, GLOCK is entitled to a judgment for: (1) Defendant's profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendant turn over to GLOCK for destruction all M917s and GLOCK Resin Copies and all means of marketing, selling or making same.

## COUNT II

## Federal Unfair Competition: Violation of Section 43(a) of the Lanham Act

38.    Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-30 of the Complaint.

39.    By marketing and selling the M917, Defendant has misappropriated Plaintiff GLOCK's trade dress in the GLOCK pistols. Defendant's aforesaid acts falsely represent that Defendant is affiliated, connected to or associated with Plaintiff GLOCK and tend to describe falsely that Defendant's goods emanate from or are sponsored or approved by GLOCK, all of which constitute violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40.    By manufacturing, marketing and selling GLOCK Resin Copies, Defendant has misappropriated Plaintiff GLOCK's trade dress in the GLOCK pistols. Defendant's aforesaid acts falsely represent that Defendant is affiliated, connected to or associated with Plaintiff GLOCK and tend to describe falsely that Defendant's goods emanate from or are sponsored or approved by GLOCK, all of which constitute violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41.    Defendant's unauthorized use of the GLOCK trade dress is willful and intentional.

42.    If not enjoined by this Court, Defendant will continue its acts of unfair competition in the unauthorized use of the GLOCK trade dress, which acts have

caused, and will continue to cause, GLOCK immediate and irreparable harm. Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(a), GLOCK is entitled to an Order of this Court enjoining Defendant's unlawful activities. GLOCK has no adequate remedy at law.

43.    As a result of Defendant's acts of unfair competition, GLOCK has been, and continues to be, irreparably damaged. Pursuant to 15 U.S.C. §§ 1117 and 1118, GLOCK is entitled to a judgment for: (1) Defendant's profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendant turn over to GLOCK for destruction all M917s and GLOCK Resin Copies and all means of marketing, selling or making same.

## COUNT III

### Federal Trade Dress Dilution: Violation of Section 43(c) of the Lanham Act

44.    Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-30 of the Complaint.

45.    As a result of the actions set forth herein, Defendant has, without the consent of GLOCK, used in commerce a trade dress which dilutes the distinctive quality of GLOCK's famous trade dress. Such use by Defendant began after

GLOCK's trade dress became famous, and is in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

46.    Defendant's acts of trade dress dilution are willful and intentional.

47.    If not enjoined by this Court, Defendant will continue its acts of trade dress dilution, which acts have caused, and will continue to cause GLOCK immediate and irreparable harm. Pursuant to 15 U.S.C. § 1125(c)(1) and Fed. R. Civ. P. 65(a), GLOCK is entitled to an Order of this Court enjoining Defendant's unlawful activities. GLOCK has no adequate remedy at law.

48.    As a result of Defendant's acts of unfair competition, GLOCK has been, and continues to be, irreparably damaged. Pursuant to 15 U.S.C. §§ 1117, GLOCK is entitled to a judgment for: (1) Defendant's profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendant turn over to GLOCK for destruction all M917s and GLOCK Resin Copies and all means of marketing, selling or making same.

## COUNT IV

### Unfair and Deceptive Trade Practices: Violation of Georgia Law

49.    Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-30 of the Complaint.

50.    Defendant, by the aforesaid acts, has engaged in conduct that creates confusion and misunderstanding, which acts constitute unfair and deceptive trade practices in Georgia.

51.    Defendant's aforesaid acts are in violation of Sections 10-1-370 *et seq.*, including Sections 10-1-372 of the Official Code of Georgia Annotated ("O.C.G.A.") and the common law.

52.    As a result of Defendant's unfair and deceptive trade practices in Georgia, Defendant has monetarily profited, and GLOCK has been monetarily damaged by Defendant's aforesaid acts.

53.    As a result of Defendant's willful unfair and deceptive trade practices in Georgia, GLOCK is entitled to recover its damages, costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, GLOCK, Inc. prays for the following relief against the Defendant:

1.    That Defendant, its corporate officers, agents, servants, employees and attorneys, and those persons in active concert or participation with it, be preliminarily and permanently enjoined and restrained:

a.  From using the GLOCK, Inc. trade dress in connection with the advertising, promotion, offering for sale, or sale of any pistol, blank-firing pistol, replica pistol, resin copy of a pistol, or other product, not associated with GLOCK, Inc.;

b.  Using any reproduction, counterfeit, copy or colorable imitation of the GLOCK, Inc. trade dress in connection with the advertising, promotion, offering for sale, or sale of any pistol, blank-firing pistol, replica pistol, resin copy of a pistol, or other product, not associated with GLOCK, Inc.;

c.  Employing any words, symbols, or conduct that suggest Defendant's products are authorized, sponsored, endorsed or approved by, or otherwise suggesting any connection between Defendant and GLOCK, Inc.;

d.  Engaging in false designation of origin, false descriptions, false advertising, false representations, or from otherwise engaging in unfair or deceptive or otherwise competing unfairly with GLOCK, Inc.;

e.  Engaging in conduct that dilutes the distinctive quality of GLOCK Inc.'s trade dress;

      f.  Making any description of representation, including by words or symbols, that Defendant's products are in any way affiliated, associated, authorized, sponsored, endorsed or otherwise connected with GLOCK, Inc.

2.    That Defendant be ordered to turn over to GLOCK, Inc. for destruction all blank-firing pistols, replica pistols, resin copies of pistols, signs, prints, print material, advertisements, and other representations and means for reproducing the same, in its possession, custody or control bearing the trade dress of GLOCK, Inc., or any colorable imitation thereof, and to obliterate, destroy, or remove all other uses or designations confusingly similar to GLOCK, Inc.'s trade dress.

3.    That Defendant be directed to file with the Court and serve on GLOCK, Inc., no later than thirty (30) days after the issuance of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

4.    That an accounting be conducted and judgment be rendered against Defendant for

    a.   All profits received by Defendant, directly or indirectly, from their sales and/or advertising of any product(s) bearing GLOCK, Inc.'s trade dress or any trade dress confusingly similar thereto;

    b.   All damages sustained by GLOCK, Inc. on account of, *inter alia*, Defendant's trade dress infringement, unfair competition, false designation of origin, false description or representation, injury to GLOCK, Inc.'s business reputation and goodwill, and/or dilution of GLOCK, Inc.'s trade dress pursuant to 15 U.S.C. § 1117 *et. seq.*, and Defendant's deceptive trade practices and unfair competition under Georgia law; and

    c.   Actual compensatory damages in an amount not presently known, but to be computed during the pendency of this action.

5.    That the actual damages assessed against Defendant be enhanced as provided by 15 U.S.C. § 1117, and that punitive damages and/or increased damages be awarded to GLOCK, Inc. as provided by Georgia law.

6.    That Defendant be required to pay to GLOCK, Inc. monetary damages to be used for corrective advertising to be conducted by GLOCK, Inc.

7.    That GLOCK, Inc. have and recover its costs in this suit, including its reasonable attorneys' fees and expenses.

8.     That GLOCK, Inc. have such other and further relief as the Court may deem just, equitable and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff GLOCK, Inc. demands a trial by jury of all issues triable of right by a jury.

This 16th day of April, 2012.

s/ Dan R. Gresham
Dan R. Gresham
Georgia Bar No. 310280
Cynthia J. Lee
Georgia Bar No. 422999
Eric G. Maurer
Georgia Bar No. 478199
**Thomas, Kayden, Horstemeyer & Risley, LLP**
400 Interstate North Parkway, Suite 1500
Atlanta, Georgia  30339
Telephone:  (770) 933-9500
Fax:  (770) 951-0933